# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ZACHAURY CAPRIOTTI,       :     CIVIL NO: 4:21-CV-00308
                                        :

          Plaintiff,        :

                                          :

          v.              :

                                          :     (Magistrate Judge Schwab)

MARK SADOWSKI, *et al*.,      :

                                          :

          Defendants.    :

                                          :

## <u>MEMORANDUM OPINION</u>

## I.  Introduction.

Plaintiff Zachaury Capriotti claims that the defendants violated his rights in connection with searches, his arrest, and his prosecution on state charges. Currently pending are two motions for summary judgment filed by the defendants. For the reasons set forth below, we will grant those motions.

## II.  Background.

Capriotti, who is representing himself and who is a prisoner at the State Correctional Institution Camp Hill, began this action by filing a complaint.  He also filed an application to proceed *in forma pauperis*, which we granted.  The complaint names as defendants Mark Sadowski and Curtis Benjamin, who are Pennsylvania State Troopers; Leonard Simpson, a former Sullivan County District

Attorney; and Christian M. Stephens, a deputy executive director of the

Pennsylvania Board of Probation and Parole.

Capriotti alleges the following facts.  On February 17, 2019, his mother

called the police and told them that Capriotti, who rents-to-own an apartment and

restaurant from his parents, started a verbal argument with them.  After state

troopers arrived, Capriotti's parents said that they wanted him removed from the

rental property.  The troopers said they could not do that because it was a civil

matter.

Capriotti's father then told the troopers that Capriotti had firearms behind a

wall in the property even though he was a felon not entitled to possess firearms.

The troopers had Capriotti's father show them, and although his father was not

100% sure that the wall contained firearms, he took them to a wall.  After tearing

into the drywall, the troopers discovered firearms.

Capriotti was then detained, and state parole officials were contacted to see

if they would commit and detain Capriotti.  A parole warrant to commit and detain

Capriotti was granted, and Capriotti was arrested on that warrant even though no

charges of parole violations were filed against him.

After Capriotti was arrested, state troopers swept the premises; they found

nothing.  But approximately seven minutes after the troopers left, for some

unknown reason, defendant Benjamin called Capriotti's father, who told Benjamin

2

that he had found guns and what he believed to be drugs in a closet in Capriotti's apartment. Defendant Benjamin then returned to Capriotti's apartment, searched the closet, and found guns and what appeared to be drugs.

No warrant had been requested for the searches. According to Capriotti, he was later charged with crimes based on the searches and seizures for the guns and drugs, and he has since been tried and incarcerated.

With the few exceptions where defendant Benjamin is mentioned in Capriotti's recitation of the facts, the defendants are not mentioned by name in the recitation of the facts. But Capriotti does allege that defendants Benjamin and Sadowski illegally entered, searched, and seized evidence, without a warrant, consent, or probable cause to do so. He further alleges that they contacted defendant Stephens of the Pennsylvania Board of Probation and Parole seeking a warrant to commit and detain Capriotti, and Stephens entered into a conspiracy to violate his rights by lodging a Board detainer. Capriotti further alleges that defendant Simpson continued to pursue charges against him even though Simpson knew that Capriotti's rights were violated, and Simpson sought to justify the actions of defendants Benjamin and Sadowski. And according to Capriotti, defendant Simpson entered into a conspiracy and further violated his rights.

Capriotti cites to the Fourth, Fifth, and Fourteenth Amendments. He claims that defendants Benjamin and Sadowski trespassed on his property and violated his

privacy without a warrant or probable cause.  He also claims that Benjamin and

Sadowski committed theft by seizing evidence without a warrant.  We construe

these claims to be Fourth Amendment claims for unlawful searches of the premises

and unlawful seizures of evidence.  Capriotti further claims that he was

incarcerated without due process.  And he claims that he has been illegally

confined, tried, and convicted through the aid of the Sullivan County District

Attorney even though the District Attorney knew that the evidence was seized

illegally.  We construe these claims as malicious prosecution claims brought under

both the Fourth Amendment and the Fourteenth Amendment.[1]  Further, in his brief

in opposition to the summary judgment motion filed by defendant Stephens,

---

[1] Malicious prosecution claims are often brought under the Fourth
Amendment. *See Thompson v. Clark*, 596 U.S. 36, 42 (2022) (addressing a Fourth
Amendment malicious prosecution claim, observing that its "precedents recognize
such a claim," and noting that "District Courts and Courts of Appeals have decided
numerous cases involving Fourth Amendment claims under § 1983 for malicious
prosecution").  And the Fourth Amendment—rather than the Fourteenth
Amendment—"always governs claims of unlawful arrest and pretrial detention
when that detention occurs prior to the detainee's first appearance before a court."
*DeLade v. Cargan*, 972 F.3d 207, 212 (3d Cir. 2020).  In some circumstances,
however, a malicious prosecution claim may be brought as a Fourteenth
Amendment procedural due process claim although "the status of a Fourteenth
Amendment right to be free from malicious prosecution is murky." *Crosland v.
City of Philadelphia*, No. CV 22-2416, 2023 WL 3898855, at *7 (E.D. Pa. June 8,
2023).  Here, because Capriotti claims that he was incarcerated without due
process and that he was illegally confined, tried, and convicted, we liberally
construe the complaint to be raising both a Fourth Amendment malicious
prosecution claim and a Fourteenth Amendment procedural due process malicious
prosecution claim.

Capriotti asserts that he is bringing false arrest and false imprisonment claims

against defendant Stephens.  Although neither a false arrest nor a false

imprisonment claim is explicitly set forth in the complaint, in light of Capriotti's

brief and given Capriotti's allegations that defendants Stephens issued a warrant to

commit and detain him, we liberally construe Capriotti's pro se complaint to

contain a Fourth Amendment false arrest and a Fourth Amendment false

imprisonment claim against defendant Stephens.[2]

   As a result of the defendants' actions, Capriotti contends, he lost his

business, his residence, and his personal belongings, some of which were very

---

[2] In addition to the above federal claims, in his brief in opposition to the
motion for summary judgment filed by defendant Stephens, Capriotti also asserts
that he is bringing an equal protection claim against defendant Stephens. *See doc.
96* at 5, 13–14.  To succeed under either a traditional equal protection theory or a
class-of-one equal protection theory, a plaintiff must demonstrate that he was
treated differently from others similarly situated. *Rouse v. City of Pittsburgh*, No.
17-2587, 2018 WL 1448671, at *3 (3d Cir. Mar. 23, 2018) (citing *Hill v. City of
Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (selective enforcement); *Hill v.
Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (class of one)).  Here,
Capriotti neither mentions equal protection in the complaint, nor does he allege
that he was treated differently from similarly situated individuals. *See doc. 1*
(passim).  However liberally we construe the complaint, we nevertheless cannot
conclude that the complaint contains an equal protection claim.  Thus, we will not
consider further any equal protection claim.  Similarly, although Capriotti makes
sporadic references to the Eighth Amendment in his brief in opposition to
defendant Stephens's motion, *see id*. at 10, the complaint contains no reference to
the Eighth Amendment or to facts that could conceivably raise an Eighth
Amendment claim.  Thus, we will not consider further any Eighth Amendment
claim.

valuable and irreplaceable.  Capriotti also asserts that he suffered inconvenience, humiliation, stress, and loss of enjoyment of life.  He seeks punitive damages.  He also seeks to have all involved reprimanded and for them to lose their jobs.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.  During the proceedings, defendant Simpson died, and he was later dismissed as a party.  *See docs. 16, 26.*  Case management deadlines were set, and the parties had a full and fair opportunity to conduct discovery.[3]

Currently pending is a motion for summary judgment filed by defendants Benjamin and Sadowski, and a separate motion for summary judgment filed by defendant Stephens.  *Docs. 56, 58.*  Those motions have been fully briefed.  *See*

---

[3] During discovery, we addressed Capriotti's discovery issues.  Recently, after discovery had closed and after the pending summary motions had been fully briefed, Capriotti filed a document titled "Notice of Ex-Parte Communication to the Above Said Court [The Honorable Judge Schwab], Regarding Newly Found Facts Providing Falsehoods & Perjury, as well as Withholding of a Witness." *Doc. 100* (all caps omitted).  In this document, Capriotti asserts that after discussions with his parents, he learned that it was his ex-sister-in-law Pam Saxon, rather than his father, that assisted with the searches that uncovered the guns and drugs. *Id.* at 2.  He asks how he should place this new fact before the court. *Id.* at 3.  To the extent that Capriotti is requesting that discovery be reopened, that request is denied as Capriotti has already had a full and fair opportunity to conduct discovery, and he could have deposed his parents to find out this information during the discovery period.  To the extent Capriotti is requesting that the summary judgment briefing should be reopened, that request is also denied because Capriotti has failed to show how it is material to the question whether the defendants violated his rights whether it was his father or his ex-sister-in-law that initially discovered the guns and drugs.

*docs*. 63, 66, 87, 95–97.  For the reasons set forth below, we will grant both motions for summary judgment.

### III.  Summary Judgment Standards.

The defendants move for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011) (quoting Fed. R. Civ. P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

7

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248–49.

When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).  At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249.  The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.  "Under such circumstances, 'there can

be no genuine issue as to any material fact, since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial.'" *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 247 (3d

Cir. 2002) (quoting *Celotex,* 477 U.S. at 323). "[S]ummary judgment is essentially

'put up or shut up' time for the non-moving party: the non-moving party must

rebut the motion with facts in the record and cannot rest solely on assertions made

in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd.

v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).


## IV. Discussion.

Capriotti's constitutional claims are brought as 42 U.S.C. § 1983 claims.[4]

Section 1983 imposes civil liability upon any person who, acting under the color of

state law, deprives another individual of any rights, privileges, or immunities

secured by the Constitution or laws of the United States." *Shuman v. Penn Manor

School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005). Section 1983 "does not create any

new substantive rights but instead provides a remedy for the violation of a federal

constitutional or statutory right." *Id.* To establish a claim under §1983, the

---

[4] Capriotti checked the box on the form complaint stating that the complaint
was filed against state or local officials under 42 U.S.C. § 1983, but he also
checked the box stating that the complaint was filed against federal officials. *See
doc. 1* at 3. Because the defendants are state, not federal officials, we construe the
complaint as raising 42 U.S.C. § 1983 claims.

plaintiff must establish a deprivation of a federally protected right and that this

deprivation was committed by a person acting under color of state law. *Woloszyn v.*

*County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

Before we address each of the pending motions for summary judgment, we

address Capriotti's Fifth Amendment Due Process Claim and his Fourteenth

Amendment substantive due process claim.  We will dismiss both such claims.

In his complaint, Capriotti mentions due process and he mentions the Fifth

Amendment, which provides, in part, that "[n]o person shall . . . be deprived of

life, liberty, or property, without due process of law." U.S. Const. amend. V.  But

the Due Process Clause of the Fifth Amendment applies only to the federal

government and federal officials. *Shoemaker v. City of Lock Haven*, 906 F. Supp.

230, 237 (M.D. Pa. 1995).  "It does not apply to the acts or conduct of the states,

their agencies, subdivisions, or employees." *Id.*  The Fifth Amendment Due

Process Clause is not applicable in this case because the defendants are state, not

federal, actors.  Thus, the complaint fails to state a Fifth Amendment due process

claim upon which relief can be granted, and we will dismiss that claim.[5]

---

[5] Although the defendants have not specifically moved for summary
judgment as to the Fifth Amendment claim, the court has the authority to sua
sponte dismiss a claim brought by a party proceeding *in forma pauperis* or by a
prisoner seeking redress from governmental officers. *See* 28 U.S.C.
§ 1915(e)(2)(B)(ii) (providing that where a plaintiff is proceeding *in forma
pauperis*, "[n]otwithstanding any filing fee, or any portion thereof, that may have
been paid, the court shall dismiss the case at any time if the court determines that

In his brief in opposition to defendant Stephens's motion, Capriotti also refers to substantive due process. *See doc. 96* at 5, 10–12. Capriotti did not clearly set forth a substantive due process claim in his complaint. In any event, he fails to state a substantive due process claim upon which relief can be granted.

The substantive component of the Fourteenth Amendment Due Process Clause limits what the government may do regardless of the fairness of the procedures that it employs. *Nekrilov v. City of Jersey City*, 45 F.4th 662, 680 (3d Cir. 2022). "The Supreme Court 'has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.'" *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 447 (3d Cir. 2020) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)). "Under the more-specific-provision rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Id*. (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)).

----

. . . the action or appeal . . . fails to state a claim on which relief may be granted"); 28 U.S.C. § 1915A(b)(1) (providing that in a case brought by a prisoner seeking redress from a governmental entity, officer, or employee, the court shall "dismiss the complaint, or any portion of the complaint, if the complaint . . . fails to state a claim upon which relief may be granted"). Here, pursuant to that authority, we will dismiss the Fifth Amendment claim.

Here, Capriotti's search claims and his claims of false arrest and false imprisonment fall under the Fourth Amendment. Thus, to the extent that Capriotti is attempting to bring substantive due process claims based on the searches, his arrest, or his alleged false imprisonment, those claims are barred by the more-specific-provision rule.[6] Moreover, as noted above, *see supra* note 1, we liberally construe the complaint to contain a procedural due process malicious prosecution claim as well as a Fourth Amendment malicious prosecution claim. But a malicious prosecution claim cannot be brought as a substantive due process claim. *See Albright v. Oliver*, 510 U.S. 266 268, 275, (1994) (plurality opinion) (holding that "substantive due process, with its scarce and open-ended guideposts" cannot be the basis for a malicious prosecution claim (internal quotations and citations omitted)); *id.* at 286 (Souter, J., concurring in judgment) (agreeing "with the

---

[6] The Supreme Court "has held that the Due Process Clause of the Fourteenth Amendment 'incorporates' the great majority of [the] rights [guaranteed by the Bill of Rights] and thus makes them equally applicable to the States." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022). "Incorporated Bill of Rights guarantees are 'enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment.'" *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (quoting *McDonald v. Chicago*, 561 U.S. 742, 767 (2010)). The Fourth Amendment applies to the States through the Fourteenth Amendment. *Bailey v. United States*, 568 U.S. 186, 192 (2013). Thus, while to the extent Capriotti is attempting to bring substantive due process claims, such claims are barred by the more-specific-provision rule, we recognize that to the extent Capriotti refers to the Due Process Clause of the Fourteenth Amendment in connection with his Fourth Amendment claims, such reference is proper.

Court's judgment that petitioner has not justified recognition of a substantive due process violation in his prosecution without probable cause"); *see also Gordon v. City of Philadelphia*, 40 F. App'x 729, 730 (3d Cir. 2002) ("[W]e have recognized that after *Albright* a § 1983 malicious prosecution claim cannot be grounded in substantive due process."); *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 380 (E.D. Pa. 2018) ("As an initial matter, there is no *substantive* due process right to be free from malicious prosecution." (italics in original)).

In sum, the complaint fails to state a Fourteenth Amendment substantive due process claim upon which relief can be granted, and we will dismiss that claim.[7]

With those claims out of the way, we address the arguments raised by the defendants in their motions for summary judgment.  We begin with defendant Stephens's motion and then we turn to defendants Benjamin and Sadowski's motion.

### A.  Defendant Stephens's Motion for Summary Judgment.

Defendant Stephens contends that he is entitled to summary judgment because he was not personally involved in the violations alleged by Capriotti and because Capriotti's search and seizure claims are barred by the favorable-

---

[7] Although the defendants have not specifically moved for summary judgment as to any Fourteenth Amendment substantive due process claim, the court has the authority to sua sponte dismiss such claim. *See supra* note 5.

termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  Before we address

those issues, we set forth the material facts on which our analysis is based.

### 1.  The Material Facts.

Local Rule 56.1 requires a party moving for summary judgment to file "a

separate, short and concise statement of the material facts, in numbered

paragraphs, as to which the moving party contends there is no genuine issue to be

tried." M.D. Pa. L.R. 56.1.  The Rule, in turn, requires the non-moving party to file

"a separate, short and concise statement of the material facts, responding to the

numbered paragraphs set forth in the statement required [by the moving party], as

to which it is contended that there exists a genuine issue to be tried." *Id.*  The

"[s]tatements of material facts in support of, or in opposition to, a motion shall

include references to the parts of the record that support the statements," and "[a]ll

material facts set forth in the statement required to be served by the moving party

will be deemed admitted unless controverted by the statement required to be served

by the opposing party." *Id.*  "Local Rule 56.1 was promulgated to bring greater

efficiency to the work of the judges of the Middle District." *Weitzner v. Sanofi

Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018).  "[T]he Rule 'is essential to the

Court's resolution of a summary judgment motion' due to its role in 'organizing

the evidence, identifying undisputed facts, and demonstrating precisely how each

side proposed to prove a disputed fact with admissible evidence.'" *Id*. (citations omitted).

Here, in accordance with M.D. L.R. Pa. 56.1, defendant Stephens filed a statement of material facts with citations to the record, *see doc. 59*, and supporting documents, *see docs.59-1–59-8*. Capriotti filed a response to that statement of material facts, *see doc.92*, and supporting documents, *see docs. 92-1–92-20*. Considering the above, as well as our duty to "construe all facts and inferences in favor of the nonmoving party[,]" *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Santini v. Fuentes*, 795 F.3d 410, 419 (3d Cir. 2015)), the following are the material facts upon which we analyze defendant Stephens's motion for summary judgment.

On August 7, 2013, Capriotti was paroled from a state prison sentence and placed under the supervision of the Pennsylvania Board of Probation and Parole ("Board"). *Doc. 59* ¶ 1; *Doc. 92* ¶ 1. As a condition of his parole, he was prohibited from possessing controlled substances or firearms. *Doc. 59* ¶ 1; *Doc. 92* ¶ 1. Capriotti's parents purchased a property in Sullivan County, Pennsylvania that included a ground-floor restaurant and an upstairs apartment. *Doc. 59* ¶ 2; *Doc. 92* ¶ 2. According to defendant Stephens, pursuant to a verbal agreement, Capriotti would live in the apartment, run the restaurant, and be responsible for paying the mortgage and other bills. *Doc. 59* ¶ 2; *Doc. 92* ¶ 1. According to Capriotti,

however, he had a lease-to-own agreement with his parents, and except for the mortgage, all matters relating to the property were in his name. *Doc. 92* ¶ 2.

In approximately September/October 2018, Capriotti fell behind on the mortgage payments. *Doc. 59* ¶ 3; *Doc. 92* ¶ 3.  And in November/December 2018, the insurance on the building was cancelled for nonpayment. *Doc. 59* ¶ 3; *Doc. 92* ¶ 3.  Around this time, Capriotti and his parents agreed to sell the property. *Doc. 92* ¶ 3.

By February 2019, Capriotti's parents had installed new locks on the restaurant, removing Capriotti's access, but he continued to have access to the upstairs apartment, where, according to Capriotti, he lived. *Doc. 59* ¶ 4; *Doc. 92* ¶ 4.  On February 17, 2019, Capriotti's mother called the Pennsylvania State Police and indicated she was having an issue with Capriotti, and he had a gun. *Doc. 59* ¶ 5; *Doc. 92* ¶ 5.[8]  When troopers arrived at the restaurant, Capriotti's parents told them that during a verbal argument, Capriotti began taking items from the restaurant. *Doc. 59* ¶ 6; *Doc. 92* ¶ 6.  And his mother told the troopers that Capriotti retrieved a large pistol from the kitchen area and left out the back door.

---

[8] Although Capriotti disputes that he had a gun, he does not point to evidence to dispute that his mother told the police that he had a gun.

*Doc. 59* ¶ 6; *Doc. 92* ¶ 6.[9]  Capriotti's parents also told the troopers that Capriotti told them that he needed to remove guns located within a wall of the kitchen. *Doc. 59* ¶ 6; *Doc. 92* ¶ 6.[10]  While the troopers were present, Capriotti's father cut open a wall and two long guns were located inside. *Doc. 59* ¶ 6; *Doc. 92* ¶ 6.  One of the guns was in a green case. *Doc. 92* ¶ 6.

The troopers called state parole and informed them of the situation. *Doc. 59* ¶ 7; *Doc. 92* ¶ 7.[11]  A Warrant to Commit and Detain ("the warrant") was issued by the Board. *See doc. 92-13* at 2.  Pursuant to Board policy, before a parole agent may issue a warrant to commit and detain an offender, he must obtain the concurrence of the district director. *Doc. 59* ¶ 9; *Doc. 92* ¶ 9.  Here, agent Lynn

---

[9] Although Capriotti disputes that he retrieved a large pistol from the kitchen area, he does not point to evidence to dispute that his mother told the police that he had retrieved a large pistol from the kitchen area.

[10] Although Capriotti disputes that his parents said any such thing, he does not point to evidence to dispute that this is what his parents told the police.

[11] Capriotti purports to dispute this statement asserting that there is no record of who contacted state parole or what information was given. *Doc. 92* ¶ 6.  But at the suppression hearing, Trooper Benjamin testified that he "initially contacted state parole and made them aware of the current situation with the parolee, being Mr. Capriotti.  They issued a permanent detainer at that time and Mr. Capriotti was taken into custody by Trooper Price and Corporal Sadowski." *Doc. 92-3* at 19 (Suppression Hearing Transcript at 70–71).  Moreover, Capriotti alleges in his complaint that he was "detained till State Parole was contacted to see if they would commit and detain" him. *Doc. 1* at 15 ¶ 5.  And he testified at his deposition that one of the troopers contacted parole, and he was told that "as soon as we have a detainer, we're going to take you to jail." *Doc. 92-2* at 11 (Capriotti Dep. at 37–38).

Miller authorized the issuance of warrant to commit and detain Capriotti, and District Director Robert Shaw concurred. *Doc. 59* ¶ 7; *Doc. 92* ¶ 7.[12]  Troopers then took Capriotti into custody, and the long guns were seized. *Doc. 59* ¶ 7; *Doc. 92* ¶ 7.

Defendant Stephens is a Deputy Executive Director of the Board, assigned to the Office of Field Probation and Parole Supervision. *Doc. 59* ¶ 8; *Doc. 92* ¶ 8. According to defendant Stephens, he was not contacted regarding the issuance of the warrant; that contact was made at the district level. *Doc. 59* ¶ 8; *Doc. 92* ¶ 8. But defendant Stephens's signature appears on the warrant. *Doc. 59* ¶ 8; *Doc. 92* ¶ 8; *see also doc. 92-13* at 2.

No Board agent was involved in the searches of the property. *Doc. 59* ¶ 10; *Doc. 92* ¶ 10.[13]  Troopers ultimately charged Capriotti with 4 counts of Felon Not

---

[12] Capriotti purports to dispute this statement asserting that neither Miller nor Shaw's signature is found on any document from the day in question, and there is no record of either of them having been involved. *Doc. 92* ¶ 7.  But there is a header on the top of the warrant that under a section titled "AGENT" has the name Lynn I. Miller and under a section titled "Concurred By" has the name Robert Shaw. *See doc. 92-13* at 2.

[13] Defendant Stephens asserts that no Board agent was involved in the search and/or seizure of Capriotti or his property. *Doc. 59* ¶ 10.  Capriotti disputes this statement apparently, at least in part, on the basis that he was taken into custody, i.e., seized, based on the Board's warrant. *Doc. 59* ¶ 8; *Doc. 92* ¶ 8.  Capriotti has not, however, pointed to any evidence to create a genuine dispute that no Board agent was involved in the searches of the property.  Thus, we consider that portion of defendant Stephens's assertion as undisputed.

to Possess Firearms, Possession of Marijuana, Possession of Drug Paraphernalia, and Endangering the Welfare of Children. *Doc. 59* ¶ 11; *Doc. 92* ¶ 11.  Capriotti was convicted of all charges after a jury trial and sentenced to 24.5  to 55 years' incarceration. *Doc. 59* ¶ 12; *Doc. 92* ¶ 12.

Capriotti filed a timely appeal to the Superior Court, which rejected all his claims except a claim that he was not given proper credit toward his sentence for time served in pre-trial custody. *See Commonwealth v. Capriotti*, 2021 WL 3836846, at *12 (Pa. Super. Ct. 2021).[14]  The Superior Court vacated the judgment of sentence and remanded the case. *Id*.  Capriotti then filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. *Doc. 59* ¶ 13; *Doc. 92* ¶ 13.  That court initially granted Capriotti's petition for allowance of appeal, *see Commonwealth v. Capriotti*, 273 A.3d 510 (Pa. 2022) (Table), but on January 10, 2023, it dismissed the appeal has having been improvidently granted, *see Commonwealth v. Capriotti*, 287 A.3d 810 (Pa. 2023).[15]  After the Pennsylvania Supreme Court dismissed Capriotti's appeal, the sentencing court resentenced

---

[14] We note that Judge McLauglin filed a concurring and dissenting opinion, in which although he agreed with the majority opinion in other respects, he disagreed "that the trial court properly refused to suppress the items seized from the apartment Capriotti was using as his residence." *Capriotti*, 2021 WL 3836846, at *12.

[15] Two justices dissented from dismissal of the appeal as improvidently granted. *See Capriotti*, 287 A.3d at 811–29 (Donohue and Wecht, J.) (dissenting).

Capriotti. *See Commonwealth v. Capriotti*, CP-57-CR-0000021-2019 (Sullivan

Cnty.)[16]

### 2. Defendant Stephens is entitled to summary judgment as to the federal claims against him.

We begin by addressing defendant Stephens's contention that he is entitled

to summary judgment because he was not personally involved in the alleged

violations of Capriotti's federal rights.  Liability in a 42 U.S.C. § 1983 action is

personal in nature, and to be liable, a defendant must have been personally

involved in the wrongful conduct.  Thus, respondeat superior cannot form the basis

of liability. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018).  In

other words, "each Government official, his or her title notwithstanding, is only

liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

And so, a constitutional deprivation cannot be premised merely on the fact that the

defendant was a supervisor when the incidents set forth in the complaint occurred.

---

[16] Capriotti's criminal docket sheet is available on the Unified Judicial System of Pennsylvania Web Portal, https://ujsportal.pacourts.us/CaseSearch (last visited Feb. 12, 2024).  The court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  The docket in Capriotti's criminal case is a public record of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008) (taking judicial notice of court docket).

*See Alexander v. Forr*, 297 F. App'x 102, 104–05 (3d Cir. 2008).  Rather, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must [show] that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Third Circuit has "recognized that 'there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

Here, defendant Stephens contends that he was not involved in the alleged violations of Capriotti's rights.  The undisputed facts show that no Board agent was involved in the searches.  And similarly, there is no evidence that any Board agent was involved in the subsequent seizures of the guns and drugs found as a result of those searches.  Thus, there is no evidence from which a reasonable trier of fact could conclude that defendant Stephens violated Capriotti's rights regarding

the searches and seizures of property.  Accordingly, we will grant defendant Stephens summary judgment as to those claims.[17]

The issue of defendant Stephens's personal involvement in Capriotti's arrest and imprisonment, however, presents a more difficult question.  Stephens admits that his signature appears on the warrant, but he asserts that he was not contacted before or involved in the decision to issue the warrant.  And he asserts that under applicable Board policy, a district director, not a deputy executive director, is the Board official required to concur in the decision to issue a warrant to detain a parolee.  Defendant Stephens makes a plausible argument that he was not personally involved in the decision to issue the warrant.  But based on the sparce evidence submitted by defendant Stephens regarding the issuance of the warrant and given that his signature is on the warrant, we are reluctant to say that a reasonable trier of fact could not conclude that defendant Stephens was personally involved in the issuance of the warrant.

---

[17] Defendant Stephens also contends that the claims based on the searches and seizures of property are barred by the favorable-termination rule of *Heck*.  But because there is no evidence that defendant Stephens was personally involved with the searches or the seizures of property, we need not reach the issue whether such claims against defendant Stephens are barred by *Heck*, although, as discussed below, Capriotti concedes that such claims against defendants Benjamin and Sadowski are barred by *Heck*.  We also note that the title of the section of defendant Stephens's brief raising *Heck* is titled broadly "This action is barred by *Heck v. Humphrey*." *Doc. 66* at 8.  But Stephens specifically addresses only the searches and the seizures of the guns and drugs in that section. *Id*. at 8–11.

Nevertheless, based on the undisputed facts, Capriotti's false arrest and false imprisonment claims against defendant Stephens fail. The Fourth Amendment states, in pertinent part, that "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause…." U.S. CONST. Amend. IV. To establish a claim for "false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). And "'where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.'" *Harvard v. Cesnalis*, 973 F.3d 190, 202 (3d Cir. 2020) (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). Thus, to establish "'a claim for false imprisonment, a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful.'" *Id*. (quoting *James*, 700 F.3d at 682–83).

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable

24

person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). In other words, "'[p]robable cause exists if there is a fair probability that the person committed the crime at issue.'" *Williams v. City of York, Pennsylvania*, 967 F.3d 252, 263 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016)).

Defendant Stephens does not specifically argue that there was probable cause before the warrant was issued.  But "[d]istrict courts 'possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.'" *In re SemCrude L.P.*, 864 F.3d 280, 296 (3d Cir. 2017) (quoting *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 280 (3d Cir. 2010)).  "'Notice' simply requires that 'the targeted party ha[ve] reason to believe the court might reach the issue and receive[ ] a fair opportunity to put its best foot forward.'" *Id*. (quoting *Couden v. Duffy*, 446 F.3d 483, 500 (3d Cir. 2006).  Further, even if notice was not provided," the grant of summary judgment is only reversible if there is prejudice." *Id*.

Here, although defendant Stephens does not specifically argue that there was probable cause before the warrant was issued, the material facts set forth by Stephens shows that there was.  And Capriotti had a full and fair opportunity to respond to those facts.  Moreover, in his brief in opposition, Capriotti briefed the

issue of whether there was probable cause.[18]  The fact that Capriotti briefed the

issue, "indicates he had notice that the court might consider the claim and that he

needed to come forward with all of his supporting evidence." *Naranjo v. Walter*,

No. 1:20-CV-918, 2022 WL 17627762, at *4 (M.D. Pa. Dec. 13, 2022) (granting

summary judgment as a particular claim *sua sponte* because the plaintiff "ha[d]

advanced arguments opposing summary judgment with respect to the claim, . . .

which indicates he had notice that the court might consider the claim and that he

needed to come forward with all of his supporting evidence"), *aff'd*, No. 22-3435,

2023 WL 5928506, at *1 (3d Cir. Sept. 12, 2023).

Although Capriotti sets forth arguments for why, in his view, there was not

probable cause, those arguments fail.  Given that Capriotti's mother asserted that

he had a gun, given that guns were found in the wall of the restaurant, and given

that Capriotti was on parole, there was probable cause to believe that Capriotti had

violated his parole by possessing guns.  Accordingly, we will grant summary

judgment to defendant Stephens on the false arrest and false imprisonment claim.[19]

---

[18] In his brief, Capriotti refers to the probable cause standard.  He also, at times, refers to reasonable suspicion, which is a standard lower than probable cause and which, in some circumstances, is the standard applied to parolees. Because the undisputed facts show that there was probable cause to believe that Capriotti had violated his parole by possessing guns, we need not delve into whether reasonable suspicion would have been sufficient.

[19] Even were we not to grant summary judgment to defendant Stephens on the false arrest and false imprisonment claims, we would sua sponte dismiss those

It is not clear whether Capriotti is asserting a malicious prosecution claim against defendant Stephens based on defendant Stephens's purported involvement with the warrant.  To the extent that he is, any such claim also fails for the same reasons his false arrest and false imprisonment claims fail.  To establish a Fourth Amendment malicious prosecution claim, a plaintiff must "show that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendants initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Geness v. Cox*, 902 F.3d 344, 355 (3d Cir. 2018) (quoting *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017)). And if Capriotti's malicious prosecution claim is based on procedural due process, he "presumably would not have to prove that he was seized as a result of the malicious prosecution." *Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022).  Here,

---

claims for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1). *See supra* note 5.  As we noted in the background section of this Memorandum Opinion, although Capriotti did not explicitly raise a false arrest or a false imprisonment claim in his complaint, we liberally construe the complaint to contain such claims.  Nevertheless, the allegations in the complaint, which show that the parole authorities were contacted after guns were found in the wall of the restaurant, *see doc. 1* at 13-14 at ¶¶ 4, 5, show that there was probable cause to believe that Capriotti had violated his parole by possessing weapons.

again there was probable cause to believe that Capriotti had violated his parole. Thus, we will grant summary judgment to defendant Stephens as to the malicious prosecution claims.

### 3. We will decline to exercise supplemental jurisdiction over any state-law claims against defendant Stephens.

It is not clear if Capriotti intended to bring any state-law claims against defendant Stephens.  But in his brief in opposition to defendant Stephens' motion, he mentions state parole regulations.  Any such state-law claims would fall within the court's supplemental jurisdiction.

Whether to exercise supplemental jurisdiction is within the discretion of the court.  28 U.S.C. § 1367(c)(3) provides that district courts may decline to exercise supplemental jurisdiction over a state-law claim if the district court has dismissed all claims over which it has original jurisdiction.  When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cahill*, 484 U.S. 343, 350 (1988)).  The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial

economy, convenience, and fairness to the parties provide an affirmative

justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)

(quoting *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

There is nothing unique about this case such that considerations of judicial

economy, convenience, and fairness provide an affirmative justification for

exercising supplemental jurisdiction over any state-law claims.  Accordingly,

because we conclude that defendant Stephens is entitled to summary judgment as

to the federal claims against him, we will decline to exercise supplemental

jurisdiction over any state-law claims.


## B.  Defendants Benjamin and Sadowski's motion for summary judgment.

Defendants Benjamin and Sadowski contend that they are entitled to

summary judgment because Capriotti's claims against them are barred by the

favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994), or, in the

alternative, they are entitled to qualified immunity.  Before we address those

issues, we set forth the material facts on which our analysis is based.


### 1.  The Material Facts.

Here, in accordance with M.D. L.R. Pa. 56.1, defendants Benjamin and

Sadowski filed a statement of material facts with citations to the record, *see doc.*

*62*, and supporting documents, *see doc. 62-1–62-8*.  Capriotti filed a response to

statement of material facts, *see doc.93.*[20]  Considering the above, as well as our

duty to "construe all facts and inferences in favor of the nonmoving party[,]"

*Peroza-Benitez*, 994 F.3d at 164 (quoting *Santini*, 795 F.3d at 419), the following

are the material facts upon which we analyze defendants Benjamin and Sadowski's

motion for summary judgment.

Capriotti's mother called 911 and reported that her son, a parolee, was

waving around a gun and acting crazy. *Doc. 62* ¶ 1; *Doc. 93* ¶ 1.[21]  Trooper

Benjamin and Corporal Sadowski reported together to the scene of the incident,

---

[20] Although Capriotti submitted an index of exhibits in opposition to
defendants Benjamin and Sadowski's motion for summary judgment, *see doc. 94,*
he did not actually submit any exhibits in opposition to Benjamin and Sadowski's
motion, *see* docket entry for *doc. 94 (*noting that "No exhibits received.").  Most—
but not all—of the documents that Capriotti refers to in his index of exhibits and in
his response to defendants Benjamin and Sadowski's statement of material facts
are in the record in other places, such as in connection with the documents
submitted by the defendants or submitted by Capriotti in opposition to defendants
Stephens's motion for summary judgment.

[21] Capriotti disputes that he had a gun.  He also attempts to dispute that his
mother said during the 911 call that he had a gun.  But the defendants point to
evidence—including 911 call sheets as well as Capriotti's mother's trial
testimony—that she reported that Capriotti had a gun.  And Capriotti failed to
submit evidence that would create a genuine factual dispute about whether his
mother reported on the 911 call that he had a gun.  He does purports to refer to a
written statement from his mother. *See doc. 93* at 1–2.  He refers to that statement
as Exhibit K. *Id*.  But Capriotti has not actually submitted such an exhibit.  And we
have not found a written statement from his mother among the other documents in
the record.

which was a restaurant and an apartment. *Doc. 62* ¶¶ 2, 6; *Doc. 93* ¶¶ 2, 6. After they arrived, Capriotti's father went and opened a wall in the restaurant to find hidden guns. *Doc. 62* ¶ 3; *Doc. 93* ¶ 3.[22] Two long guns were found; one was in a case. *Doc. 62* ¶ 4; *Doc. 93* ¶ 4. The gun that Capriotti's mother had reported seeing Capriotti waving around was not behind the wall and was outstanding. *Doc. 62* ¶ 1; *Doc. 93* ¶ 1.[23]

After the troopers left, Capriotti's father searched the apartment where Capriotti's son and another individual stayed,[24] and he found guns and drugs. *Doc. 62* ¶ 6; *Doc. 93* ¶ 6.[25] Capriotti's father informed Trooper Benjamin. *Doc. 62* ¶ 6; *Doc. 93* ¶ 6. Trooper Benjamin returned and took possession of two revolvers, two clear plastic baggies containing methamphetamine and one containing marijuana, and two glass smoking pipes. *Doc. 62* ¶ 7; *Doc. 93* ¶ 7.

---

[22] Although Capriotti purports to dispute this fact, the evidence that he points to in this regard fails to create a genuine factual dispute.

[23] Again, Capriotti denies having a gun. But, again, he has not pointed to evidence to raise a genuine dispute that his mother had reported that he had a gun.

[24] According to Capriotti, he also lived in the apartment. *See doc. 93* ¶ 6 (referring to the apartment as his "tenement").

[25] Although Capriotti purports to dispute this fact, the evidence that he points to and that is in the record in this regard fails to create a genuine factual dispute. We note that Capriotti purports to cite to a written statement of his father. *See doc. 93* at 4–5. He refers to that statement as Exhibit L. *Id.* But Capriotti has not actually submitted such an exhibit. And we have not found a written statement from his father among the other documents in the record.

Capriotti was charged with various crimes. *Doc. 62* ¶ 11; *Doc. 93* ¶ 11.  He challenged all the evidence seized via a motion to suppress the evidence, arguing, among other things, that the Troopers should have obtained a warrant. *Doc. 62* ¶ 8; *Doc. 93* ¶ 8.  That motion to suppress was denied. *Doc. 62* ¶ 8; *Doc. 93* ¶ 8.

Following a jury trial, Capriotti was convicted of one count of Possession of a Firearm Prohibited as a first degree felony, three counts of Possession of a Firearm Prohibited as a second degree felony, and one count each of misdemeanors, Endangering the Welfare of Children, Possession of a Controlled Substance, Possession of Drug Paraphernalia and Marijuana-Small Amount. *Doc. 62* ¶¶ 11, 12; *Doc. 93* ¶¶ 11, 12.

Capriotti appealed, and the Superior Court affirmed on the suppression issue, analyzing the issue in a memorandum opinion. *Doc. 62* ¶ 9; *Doc. 93* ¶ 9.  In fact, as set forth earlier, the Superior Court rejected all of Capriotti's claims on appeal except a claim that he was not given proper credit toward his sentence for time served in pre-trial custody. *See Commonwealth v. Capriotti*, 2021 WL 3836846, at *12 (Pa. Super. Ct. 2021).  The Superior Court vacated the judgment of sentence and remanded the case. *Id.*  Capriotti then filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, and that court initially granted Capriotti's petition for allowance of appeal. *See Commonwealth v. Capriotti*, 273 A.3d 510 (Pa. 2022) (Table).  But on January 10, 2023, it dismissed

32

the appeal as having been improvidently granted. *See Commonwealth v. Capriotti*, 287 A.3d 810 (Pa. 2023).  After the Pennsylvania Supreme Court dismissed Capriotti's appeal, the sentencing court resentenced Capriotti. *See Commonwealth v. Capriotti*, CP-57-CR-0000021-2019 (Sullivan Cnty.).[26]

### 2.  The federal claims against defendants Benjamin and Sadowski will be dismissed pursuant to the favorable-termination rule of *Heck*.

As set forth above, we construe the complaint as raising three Fourth Amendment claims against defendants Benjamin and Sadowski: (1) a claim based on the searches of the restaurant and apartment; (2) a claim based on the seizure of his property; and (3) a claim based on his prosecution.  Also, in addition to those Fourth Amendment claims, as set forth above, we construe the complaint to raise a procedural due process malicious prosecution claim.  Defendants Benjamin and Sadowski contend that Capriotti's claims against them are barred by the favorable-termination rule of *Heck*.

In *Heck*, the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence

---

[26] *See supra* note 16.

invalid, a Section 1983 plaintiff must prove that the conviction or sentence has

been reversed on direct appeal, expunged by executive order, declared invalid by a

state tribunal authorized to make such [a] determination, or called into question by

a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at

486–87, 490 (footnote omitted).  "Thus, when a state prisoner seeks damages in a

§ 1983 suit, the district court must consider whether a judgment in favor of the

plaintiff would necessarily imply the invalidity of his conviction or sentence; if it

would, the complaint must be dismissed unless the plaintiff can demonstrate that

the conviction or sentence has already been invalidated." *Id.*  The "favorable-

termination requirement is rooted in pragmatic concerns with avoiding parallel

criminal and civil litigation over the same subject matter and the related possibility

of conflicting civil and criminal judgments." *McDonough v. Smith*, 139 S. Ct.

2149, 2157 (2019).  "The requirement likewise avoids allowing collateral attacks

on criminal judgments through civil litigation." *Id.*

　　　When *Heck* applies, even if the plaintiff has exhausted available state

remedies, he has no cause of action under § 1983 unless and until the conviction or

sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of

habeas corpus. *Heck,* 512 U.S. at 489.  "[A] state prisoner's § 1983 action is barred

(absent prior invalidation)—no matter the relief sought (damages or equitable

relief), no matter the target of the prisoner's suit (state conduct leading to

conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration."

If Capriotti were to succeed on his claims of malicious prosecution, such success would necessarily imply the invalidity of his conviction. *See Cromwell v. Fichter*, No. 22-3169, 2023 WL 3734969, at *1 (3d Cir. May 31, 2023) (holding that the plaintiff's "malicious prosecution claim fails because success on it would necessarily imply the invalidity of his conviction"); *Andresen v. Jackson*, No. 22-2934, 2023 WL 2137856, at *1 (3d Cir. Feb. 21, 2023) (holding that the plaintiff's "claim of malicious prosecution fails because it would necessarily imply the invalidity of her conviction"). Thus, because Capriotti has not shown that his conviction has been invalidated and the prosecution ended in his favor, his malicious prosecution claims are barred by *Heck*'s favorable-termination rule.

We next turn to Capriotti's search and seizure claims. In *Heck*, the Supreme Court noted that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Heck*, 512 U.S. at 487 n.7 ("Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful") (emphasis in original) (citation omitted). Thus, "Fourth

Amendment claims are not categorically barred by *Heck*." *Clouser v. Johnson*, 40 F. Supp. 3d 425, 434 (M.D. Pa. 2014), *aff'd*, 684 F. App'x 243 (3d Cir. 2017). And, in fact, "*Heck* "typically does not bar actions for Fourth Amendment violations.'" *Id*. (quoting *Sanders v. Downs*, 420 F. App'x 175, 179 (3d Cir. 2011). Nevertheless, the court "must undertake a fact-intensive inquiry for each claim raised by the plaintiff and determine whether success on that claim would necessarily impugn the integrity of the plaintiff's criminal conviction." *Id.* at 433; *see also Eddings v. Att'y Gen. of Pennsylvania*, No. 22-2614, 2023 WL 1793934, at *2 (3d Cir. Feb. 7, 2023) ("A determination of whether Heck applies requires a case-by-case fact-based inquiry into whether the claim implies the invalidity of the underlying conviction or sentence); *Mills v. Pivot Occupational Health*, No. 22-1817, 2022 WL 17984476, at *1 (3d Cir. Dec. 29, 2022) (stating that "a determination of whether Heck applies to a Fourth Amendment claim requires a case-by-case fact-based inquiry into whether the claim implies the invalidity of the underlying conviction or sentence" citing *Gibson v. Superintendent*, 411 F.3d 427, 447–49 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 182 (3d Cir. 2010)).

Defendants Benjamin and Sadowski contend that under the fact-based-inquiry, Capriotti's search and seizure claims are barred by *Heck*, and they cite cases where courts have concluded that the Fourth Amendment claims presented in

36

those cases were barred by *Heck*. *See doc. 63* at 6–8 (citing, among other cases,

*Keeling v. Att'y Gen. for Pennsylvania*, 575 F. App'x 16, 18 (3d Cir. 2014)

(concluding that because "Keeling affirmatively contends that the allegedly illegal

search and seizure resulted in his unlawful conviction," under *Heck,* "he cannot

bring this claim unless and until he successfully attacks his conviction"); *James v.*

*York Cnty. Police Dep't*, 160 F. App'x 126, 133–34 (3d Cir. 2005) (concluding

that the district court properly granted summary judgment as to the plaintiff's

Fourth Amendment search and seizure claims given that the plaintiff "conceded

that his arrest and conviction were based on the evidence gathered" from the search

and, thus, "his Fourth Amendment claims were a thinly-veiled collateral attack on

his conviction"); *Jones v. Shelly*, No. 19-CV-4460, 2020 WL 374465, at *3 (E.D.

Pa. Jan. 23, 2020) ("Jones bases his § 1983 claim on allegations that the improper

search of his tool boxes produced the evidence, a rifle, that resulted in a charge of a

prohibited firearm being filed against him and to which he subsequently pled

guilty.  Accordingly, his claim clearly implicates the validity of his conviction and

is barred by *Heck*."); *Usery v. Wood*, No. CV 14-6346-BRM-DEA, 2017 WL

960354, at *7 (D.N.J. Mar. 13, 2017) (concluding that "because the sole charge for

which Plaintiff was convicted was illegal possession of the allegedly illegally

seized gun, if Plaintiff were to prevail on his § 1983 unreasonable search and

seizure claims, it would necessarily imply the invalidity of Plaintiff's underlying

conviction").

Defendants Benjamin and Sadowski contend that the case of *Anderson v.*

*Dauphin Cnty. Adult Prob. Off.*, No. 1:15-CV-00878, 2016 WL 769278, at *7

(M.D. Pa. Jan. 25, 2016), *adopting report and recommendation*, 2016 WL 759162,

at *1 (M.D. Pa. Feb. 26, 2016), is particularly "informative." *Doc. 63* at 6.  In

*Anderson*, Magistrate Judge Saporito noted that the "'fact-based approach requires

a district court to inquire into the nature of the criminal conviction and the

antecedent proceedings.'" *Id*. at *6 (quoting *Gibson*, 411 F.3d at 451).  He also

observed that "'[i]n situations where the evidence seized as a result of an unlawful

search or arrest was used to convict the defendant, district courts examine the

factual circumstances to determine whether doctrines such as independent source,

inevitable discovery, or harmless error would have permitted the introduction of

the evidence.'" *Id*. at * 7 (quoting *Gibson*, 411 F.3d at 448–49).  And "[w]here it is

impossible or improbable that such doctrines would have permitted the

introduction of the evidence at issue in the criminal proceedings, the *Heck*

favorable-termination rule applies." *Id.* (*Gibson*, 411 F.3d at 449).  In *Anderson*,

Magistrate Judge Saporito concluded that Anderson's conviction was based solely

on the evidence recovered during the search at issue; the state court, in connection

with Anderson's motion to suppress, found that the search was lawful; and but for

38

the search, the drugs underlying the conviction would not have been seized. *Id*. Given this, he concluded that "[s]ince the drugs found during the allegedly illegal search are the only link between Anderson and the drug offenses for which he was convicted, his Fourth Amendment unreasonable search claim is barred by *Heck*, as a finding by this Court that the search was unlawful would necessarily imply the invalidity of his state criminal conviction." *Id*.

Defendants Benjamin and Sadowski contend that as the search claim in *Anderson* was barred by *Heck*, so too are Capriotti's search and seizure claims. They assert that Capriotti is claiming that he was wrongfully convicted based on the alleged illegal searches and seizures.  In this regard, the defendants point out that Capriotti alleges that he was illegally held and confined, that he made the same arguments that he is making in this case in his motion to suppress in state court, that he lost on those arguments in state court, that all the charges against Capriotti emanated from evidence seized during the searches, and that that evidence gave rise to his convictions.  For these reasons, defendants Benjamin and Sadowski contend that Capriotti's search and seizure claims are barred by the favorable-termination rule of *Heck*.

Capriotti does not dispute the defendants' assertions.  Nor does he contend that due to doctrines such as independent source, inevitable discovery, or harmless error, his claims do not imply in the invalidity of his conviction.  In fact, Capriotti

asserts that "their [sic] is no argument he may put forth that would not challenge his criminal conviction." *Doc. 97* at 2.  And he admits that his claims against defendants Benjamin and Sadowski are barred by the favorable-termination rule of *Heck*.  Thus, Capriotti has waived any argument that his claims against defendants Benjamin and Sadowski are not barred by the favorable-termination rule of *Heck*. Because Capriotti agrees that his claims against defendants Benjamin and Sadowski are barred by the favorable-termination rule of *Heck*, we will dismiss those claims without prejudice.[27] *See Curry v. Yachera*, 835 F.3d 373, 380 (3d Cir. 2016) (explaining that a dismissal with prejudice based on *Heck* was error and modifying the order of dismissal based on *Heck* "to reflect that these claims are dismissed without prejudice").[28]

---

[27] Because we will dismiss the federal claims against defendants Benjamin and Sadowski without prejudice pursuant to the favorable-termination rule of *Heck*, we do not reach Benjamin and Sadowski's alternate argument that they are entitled to qualified immunity.  Further, we note that it does not appear that Capriotti is bringing any state-law claims against defendants Benjamin and Sadowski.  But to the extent he is, for the same reasons set forth above in connection with defendant Stephens, we will decline to exercise supplemental jurisdiction over any such claims.

[28] Although Capriotti concedes that his claims against defendants Benjamin and Sadowski are barred by *Heck*'s favorable-termination rule, he requests that the court stay this matter pending the resolution of his criminal appeals. *Doc. 97* at 2. But "a § 1983 claim that attacks the validity of a plaintiff's conviction or sentence does not accrue for statute-of-limitations purposes until the underlying criminal case is favorably terminated." *Coello v. DiLeo*, 43 F.4th 346, 353 (3d Cir. 2022). And when a claim is barred by *Heck*'s favorable-termination rule, the plaintiff can renew such a claim "'if he ever succeeds in overturning his conviction[.]'" *Curry*,

## V.  Conclusion.

For the foregoing reasons, we will dismiss pursuant to § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1), Capriotti's Fifth Amendment due process claim and his Fourteenth Amendment substantive due process claim.  We will also grant defendant Stephens' motion for summary judgment and direct the Clerk of Court to enter judgment in favor of defendant Stephens as to Capriotti's Fourth Amendment search, seizure, false arrest, false imprisonment, and malicious prosecution claims as well as his Fourteenth Amendment procedural due process malicious prosecution claim.  And we will grant defendants Benjamin and Sadowski's motion for summary judgment to the extent that pursuant to the favorable-termination rule of *Heck*, we will dismiss without prejudice the federal claims against defendants Benjamin and Sadowski.  Further, we will decline to exercise supplemental jurisdiction over any state-law claims.  An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge

---

835 F.3d at 379 (quoting *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995)).  That is why a dismissal based on *Heck* is without prejudice. *Id*.  Because there is no bar to Capriotti refiling claims that have been dismissed based on *Heck* if he eventually succeeds in have his conviction overturned, there is also no basis to stay the case.